Case number 18-7018. Marshall's Locksmith Service, Inc. et al. Appellants v. Google, LLC et al. Mr. Roberts for the appellants, Ms. McCarthy for the accolades. Mr. Roberts. Thank you, Mr. Chairman. May it please the Court, my name is Barry Roberts and I represent the appellant locksmiths in this action. This is an appeal from a dismissal of plaintiff's complaint under Rule 12b-6 of the Federal Rules of Civil Procedure. The dismissal was based on a finding that the action is precluded by Section 230 of the Communications Decency Act. The a-leading case in this circuit on the Communications Decency Act is Clayman v. Zuckerberg, which was cited both by the District Court and by the defendant appellees. In that case, the Court affirmed the dismissal of a complaint under Rule 12b-6 based on the Communications Decency Act holding that the CDA is an affirmative defense and it must be shown that the barrier to suit, quote, must be evident in the face of the complaint. In that case, in the Zuckerberg case, the Court specifically found that nowhere in the complaint was there even a suggestion that the information published came from Facebook. Our complaint is very different. We have specifically alleged that the search engines publish information that they create and develop, which are the terms used by the statute. When a consumer, locked out of his or her home, picks up their cell phone and looks for a locksmith, the search engines determine exactly where that consumer is located. And they publish maps. Maps will show what we refer to as the scammer locksmiths, with pinpoints showing a purported location. I say purported because in many cases they're made up. And a purported address, which in many cases are made up. Moreover ---- I'm trying to clarify one thing on what you say is made up. It sounds like your allegation is that the business might be made up, but surely the actual locksmith is local because they show up to let somebody into their car or deal with these things. Is there any question that the locksmiths themselves individually are local? The way these scammer operations work is you'd have no idea where the phone is being answered. It may be a 202 number, but it could be answered anywhere in the world. They will dispatch somebody from their home who is unqualified, unlicensed, and will essentially cheat the consumer. It's for this reason that many states have licenses. That locksmith has got to be local, right? They will dispatch somebody who is local, yes. We have no idea where he or she is coming from because typically they will show up in an unmarked vehicle, provide no identification. But yes, what these maps purport to show are two things. One, where the scammer is located, and the pinpoint location for the scammer is something that is typically arbitrarily assigned by the search engine. And in many cases, it will not only put a pinpoint on the map, it will include an address. And often when you look at the addresses, there will be pizza parlors or public parks or a PNC bank on Pennsylvania Avenue. In addition, you will often see a second pinpoint showing the location of the consumer, the inquiring consumer. The idea of the map is to show the nearness, the geographic proximity of these locksmiths to the consumer. Is the pinpoint of the consumer generated by the GPS of the telephone? Yes. The search engines essentially get it as a result of the GPS included in the telephone. So they will know when I phone for a locksmith, they'll know exactly where I am, and they will generate maps. Are you alleging that the representation in map form of the GPS location of the consumer, if that were all there were in the case, would that be protected by the CDA? I'm sorry? If all that were at issue were the representation of where the consumer is on the map, would that be protected by the CDA? No, because if all they did was represent where the consumer is located, the consumer's location is information that the search engine itself develops as a result of the GPS coordinates that it receives. So your allegation is that even without the fraud of the locksmiths, even without the false information about their location, any time somebody inputs, any time somebody uses Google Maps with their telephone and Google Maps translates that into a map representation, that's not protected, that's developed by Google. Is that right? If Google or Yahoo or Bing publish a map showing a location of a consumer, and it is the search engine that determines the consumer's location, that's information that is determined by the search engine. What's an example of something that's not developed by the search engine? When, for example, a search engine scrapes the Internet and they will find a website or a listing for a phony locksmith, which you'll typically see, it will say, locksmith serving the Washington metropolitan area, call 202 so-and-so, and they republish exactly what they found without change, they've got a good case that they're covered under the CDA. What about the map location of the good locksmith? That's also not protected? The map location, if the locksmith's information says area 703, serving the Washington metropolitan area. Let's say the good locksmith, your client, the good locksmith, puts their exact address, the correct honest address on their own website, and Google converts that into a map pinpoint. Is that cover protected by the CDA or not? Yes. If a good locksmith in their website has its true address and Google merely puts that information on a map, the map is based on information obtained from somebody else. So that's okay? That's okay. We're only slowly working up to this, so now I've got to go back to your answer to the previous question. So if a consumer uses Google Map with their own telephone and provides the information of their GPS location, which Google then, based on that, puts a map pinpoint, you told me that wasn't okay. What's the difference between the good locksmith and the consumer, other than that you represent the good locksmith? Let me see if I can clarify this. If all we have is a publication based on the information provided by the legitimate locksmith, that would be protected by the CDA if all they are doing is republishing the information they obtained. Including their map location? A map location, arguably, is another depiction of, it's just another way of indicating where the good locksmith is located. And that's okay? That would be okay. Okay, so now I'll give you a chance to reconsider your answer to my original question. If I use my telephone to find my current location and Google Maps reflects that on a map, that's the entire hypothetical. Their information is based on the information transmitted by my telephone. The correct information. Now, is that okay? I would say that the information is developed, that the publication of the map is based on, if all they do is republish the consumer's location, they have a publication based on information that they themselves developed. I would say that the search engine develops the consumer's location from the GPS. It's not like they take, it's not like, I mean, it's a tough one because you can, I suppose one could argue that by merely calling, the consumer is providing their own location information. What we're really complaining about here. I know what you're complaining about, but in order for me to get to an understanding of what you think the CDA protects and what it doesn't, we've got to go through these questions. So bear with me. We already know that if the good locksmith lists their street address on their website, and Google public, I'm going to use Google as the example here. Yes, sir. I understand there are other defendants. And Google represents that on a map. You told me that's protected by the CDA. If what Google represents. There's no more ifs. I gave you all the facts. Yes. If it's nothing more than what they received from the good locksmith. Okay. Now, if I, using my telephone, electronically, obviously, send my GPS coordinates to Google, and they represent where I am on a map, because I want to know where I am, because I am lost. Is that protected? Yes or no? It has to be yes. I think it is yes. Yes. Yes. Be consistent. So now we know, then, that it is not simple. There are some things that, even in your terms, can be developed in maybe English language, but which don't come within the statutory definition of developed, right? Yes. You're developing a pictorial representation based on a street address, in the example of the good locksmith, and based on a GPS transmission from my telephone in the example of a consumer, right? Yes. To the extent that the search engine simply depicts the exact information they obtained from the good locksmith and the consumer on a map that appears to be covered by the CDA. Okay. So that's, but, of course, that's not the way the information comes. It doesn't come to them in a map. In fact, it comes to them in some kind of electric transmission over the Internet, which, in the end, are ones and zeros, and it then transmits into and transforms into a pictorial representation. So there has to be something that the search engine does that you're acknowledging is not actually something that they themselves are, quote, creating, but is still protected. What we're concerned with is when you have the scammer locksmith with no address at all. They put a map pinpoint. That map pinpoint is not based on any information they obtained from the scammer locksmith. Well, it's based on some information. It's based on some. Wait, wait, wait. What do you think it's based on? It's got to be based on something. It can't really be. The existence of a scammer isn't enough for any of the defendants to do anything. They could put a pinpoint in Keokuk, Iowa. There's got to be something. It's based, yes. It's based in part on what they get from the scammer, but also in part. Wait, wait. Now, like, but, gee, I've got to go slowly here. What is it you acknowledge that they're getting from the scammer, on which they rely to not go to Keokuk, Iowa, but to be? Let's say the scammer represents and it provides service throughout the D.C. metropolitan area. Okay. The search engine will arbitrarily put a pinpoint and often actually assign an arbitrary address to the scammer somewhere in the D.C. area. And we would say that it's one thing to say you're in Area 703 or Area 202, but when you pinpoint a specific location and specific address, that's additional new information. And the statute speaks in terms of the information. That's information that is coming from the search engine. And what they're doing is trying to show that the scammer is nearby or the scammer in relationship to the consumer. That relationship itself is new information that the search engine develops. We're not saying that everything they publish doesn't come from them, but the way the statute reads, you have two parts. One, the statute said that they're not to be treated as the publisher if they publish something coming from another information provider. But then the statute goes on and says they are to be treated as the publisher if what they publish in whole or in part is of their own creation or development. And what we are saying is part of the information they are publishing, they develop and create themselves. And it's that part of the information that the idea that this scammer who may be anywhere is right near the inquiring consumer is what induces the consumer to call that scammer rather than a legitimate locksmith who may be another half a mile away. Can I ask, for states that do not require, like the District of Columbia, that do not require licensing of locksmiths, no licensing is required, what exactly is the harm then that a non-licensed locksmith shows up? It is typically a species of fraud. They're typically overcharged. You will see these scammer ads, locked out of your home, call us, $19. You show up, they say, oh, $19 gets us here. It's $300 to get you back at your home. And then instead of using the professional skills and tools. So we're in the district, and there's no licensing requirement at all. If there's no one. And so how is one to know categorically? You can't say the non-licensed ones are the ones that are the scammers. How do you know which ones are the scammers? Or how would the service providers know which ones are the scammers versus which ones aren't? They can't look to licensing records. Well, I think there are a number of indicia. The first indicia of the scammer is the obfuscation or lack of identification. The consumer never really knows who they're dealing with. Maybe to the consumer. I'm talking to the Internet service providers here. Even the search engines, when they see something that there is no identification of who it is, there is no indication as to the source of the information, no backlink, that certainly suggests that this may not be legitimate. How much research are they supposed to do in each individual jurisdiction to figure out who's where there's no licensing required to figure out who's a scammer and who's not? It seems impossible to me. How are they supposed to know within Washington, D.C., who's a scammer and who's not? Well, because, for one thing, they've had many, many, many complaints and they ignore them. But going beyond that, Washington, D.C. I think there are lots of complaints about lots of things. Maryland and Virginia both require licensing. I'm talking about the minority of states that require licensing. In the district, you will need a general business license. The concern is whether they know they are a scammer or not. The publishing of additional new information gives them additional legitimacy, and that's what we're focusing on here. So we're in the District of Columbia. There's no licensing required. And they drop a pinpoint that suggests a locksmith is near Georgetown, but they aren't certain what the address is. And that person comes, and they are actually wonderful locksmiths. They may not have a precise address, but they are very honest and provide great service. That could happen. It could happen, yes. Okay, so they can't tell just by the fact that maybe they don't have as precise an address as they do with some businesses. Which category do they fall into? As a practical matter, the legitimate locksmiths want to and do identify who they are, where their shops are located. By making up addresses. No, I'm talking about the other group, right? You have your clients who do that. But your argument seems to assume that in states even where licensing isn't required, 100% of those who don't have as precise an address as your clients are fraudulent and are supposed to be. You're either arguing that, that they don't have as much address identification as your clients, they must be deemed fraudulent, or you're requiring the Internet Service Providers to do individual research on every locksmith. Not that they must be fraudulent, but the lack of identification is certainly one indicator that something is wrong. What we are concerned with... But if they're perfectly fine, you wouldn't say it's a problem for them to show them on the map. There's nothing unlawful, no licensing required, and they're providing perfectly fine service. So how are they supposed to differentiate? When the search engines take the information from the scammer, or the possible scammer, and they add to it precise location and address information that they make up themselves, that gives the scammer added legitimacy. It makes them look like these really established locksmiths with a shop nearby. Would you dispute the test and the... I didn't hear your brief disputing this, that the question is whether the information... Assuming you're correct that they're creating substantive information of their own, that it's only relevant for purposes of getting them out, disqualifying them from CDA immunity, if that information that they create materially contributes to the illegality? Do you agree that it has to... It's not just that they create information. It's that it's information that contributes materially to the illegality, correct? Do you dispute that legal test? No. Let me address that in two ways. First of all, we're talking about the immunity afforded by the CDA, the statute. The statute does not talk at all about the effect or the content of the information. The statute speaks only to whether it was developed or created by the publisher. And so what we are saying is if they developed or created the new information, the statute doesn't apply. That doesn't necessarily mean that what they published is somehow unlawful. That's a different level of proof, and that's farther down the proceeding. What it means is if they've created information that is part of their publication or developed information that's part of their publication, whatever defenses they have, and they may have many, the CDA defense does not obtain. Well, what if the information they created had nothing to do with the illegality? They said vegetarian, vegan, carnivore. They added that to the locksmith information. It has nothing to do with the fraud or illegality. You would still say that there's all immunity for anything? Within the literal wording of the statute. Well, I'm asking if that's your position. If they are providing information beyond what they received from the scammer or the information provider, then under the literal reading of the statute. I'm asking you whether that's your position. That's information, if that additional information would take it out of the CDA protection. Okay. And that's your position? Yes, but it doesn't necessarily mean it's illegal. It's unlawful. The plaintiff would still have to prove that there is something unlawful about it. It only means that that defense is not available. As the Court stated in the Facebook case, it's an affirmative defense, and it must be evident from the face of the complaint that the CDA applies. If the test adopted for CDA immunity, for immunity, were, just assume it were that the fraud had to materially contribute to the harm alleged by a plaintiff, do you lose? We believe that the additional information, that is, this phony location information, does materially contribute to the harm because it tends to induce consumers. These maps are published for the very purpose of suggesting to the consumer that the persons shown are nearby. And you agreed that they're nearby because they show up. It's not like they show up 12 hours later. Well, we don't know where they're showing up from. They just show up. I understand, but they've got to be local to show up in the parking lot. They can't be coming in from Iowa. But the local could be anywhere from Gaithersburg to Springfield to where when the consumer is right out here. In fact, the map suggests that the consumer is more likely to call somebody who is closer. And when they arbitrarily and artificially put somebody closer, that materially contributes it. But as I said earlier, whether it materially contributes to the fraud or not, I don't know where the district judge got that because it's not in the statute. The statute talks about the immunity based upon the origin upon whether the public information. I think the judge got it from another circuit's test. Pardon? The judge got it from another circuit's test. The statute I'm referring to? No, the material contribution test is another circuit applies to. I'm not hearing. It's not what it was, Your Honor. The material contribution test is applied by another circuit. That's where the judge got it. I'm not saying it's correct or not correct, but it's not as if the judge made it up on his own. It's not in the statute. We think it's material. Moreover, we think we should have an opportunity to prove that it's material. A finding that it's not material is a finding of fact that perhaps a district judge could make properly after there's been some evidence, after there's been some discovery. But that's not a finding of fact that should be made based on the face of a complaint under Rule 12b-6. Are there further questions from the bench? No. Thank you. I'll hear from the other side. Thank you, Your Honor. May it please the Court. It's Kathleen McCarthy on behalf of the defendants. This circuit in Clayman held that Section 230 mandates that when a complaint seeks to hold interactive service providers liable for publishing third-party information,  and the district court correctly realized that the falsity at issue here derives from third parties, and that any accompanying representations by any of the defendants were not adequately pled. What about this claim about street addresses? First, this may require going outside the record just so I have some idea, but is it the case that where a website does not provide a street address but only provides, for example, an area 202 telephone number? Is there a case involving that particular scenario? Or will the defendants put a specific street address on the map? That's their allegation. That's different from the case you're citing. Right. That is their allegation. Are you asking me what the defendants do, which is not in the record, which I'd be happy to tell you what Google does? I'm going to ask two questions. The first one is that one, which not in any way is going to be dispositive of this case, but I'm interested in knowing. Then we'll talk about the question of whether it affects your CDA immunity. The map functionality by these defendants has been under development and improved and changed over the years. When interactive maps were first created, it was entirely possible for a third-party business to post a pinpoint that would say, I'm here, this is where I am. That was prone to scam, as a lot of things on the Internet are prone to scam. And as the maps have developed over time, various methods of verification have been implemented. For example, if you say. . . No, that's not quite the question I meant. The question I'm asking is, is there ever a time when one of the defendants will list an address that is not provided by the scam locksmith, the real locksmith, any company? An actual street address. I suppose it's possible. I don't have an example of that. I haven't been able to find that. He provides no examples in the complaint, no explanation of how that would happen. But these maps are neutral tools that take information from. . . I don't want a general description. I just want this. . . This is the one thing that's bothering me a bit, and so if you'll help me with this, that would be helpful. So now let's take it as a hypothetical. Imagine that the only information you get from the scam locksmith is a telephone number. But you represent a specific street address, which is not the street address that goes back to that telephone number in some reverse lookup book. It's just a specific street address. Now is that the creation and development of information? No, that would be protected by the CDA. Why would that be, even if that information did not come from anyone other than from the defendant itself? It's the same. . . Wait, wait, wait. I have the same concern. I'm not understanding your answer. Joe's locksmith, allegedly a scammer, gives you a phone number. You can't get an address by reference to that phone number. Wait a minute. The search engine says Joe's locksmith, telephone number 2801 New Mexico Avenue, Washington. . . I'm using my own address. They are not there. And they put that on. That's not the same as the existing cases. You think that's okay? I think it's fine. I think it's very equivalent to what happens with a search engine organic search page, where you do a search that says locksmith near me, and maybe at the top there's an advertisement for a locksmith who is not as near to you as perhaps some other locksmith was. Wait, wait, wait. I want to make sure. . . I have a limited little question. I want to make sure I'm getting the answer to this. Your client has nothing more than a reference to Joe's locksmith, maybe a telephone number which gets them no address by any technology. It won't get them an address. What they then produce and put on any one of these search engines. . . If I look up and see Joe's locksmith, I now have an address that your client has added. It comes from nowhere. They just added it. I still think that's protected under the CDA. These platforms are entitled to set up their maps in the manner that they want to set up their maps, to develop their algorithms in a manner that they believe is going to produce useful products. If there were a situation. . . And they give an address, and the hairdresser location is down the street. I mean, they can add all of these things. They don't do that. They wouldn't do that. No, no, no. But under the CDA. . . Forget your answer to that question because we don't know the answer to that question. That's in a pleading, and it was killed on a motion to dismiss. So we don't know, and you've never responded. I'm giving you a hypothetical. Is that enough to survive a motion to dismiss? They're simply adding all kinds of information about Joe's locksmith that Joe has never given. If the allegation in the complaint were that the information that was added by the search engine materially contributed to the harm at issue here, then there might be a claim. There's an affirmative representation by the search engine, very clear. This would be the Anthony v. Yahoo case, for example. Anthony v. Yahoo involved the Yahoo dating service. So there are fake profiles in a dating service, as there might be, because there are people who think it's funny to create a fake profile. Yahoo is not responsible for the fake profiles that. . . I don't think that's exactly the question. We're not talking about a fake locksmith who fake represents that they are on New Mexico Avenue. We're not talking about that. I think we understand your argument that that's protected. We're talking about a situation where the locksmith doesn't make any representation about a street address. And how is the presentation on a map, then, if there is a local person that will come, as Judge Millett said, and provide the services, how is that materially contributing to what plaintiff is alleging? So I'd say two things about that. One, judges ask the questions. And two, their argument here is that there's two ways, two different issues in this case. One is whether it comes within the create and develop test, and whether it comes within the . . . I'm trying to remember. . . There's language in some of the cases about editorial content and routine changes and logarithmic changes. . . I mean, algorithmic changes, et cetera. You have now fallen back to the second test, which this Court has not yet adopted, which is the materially contributes test. Are you telling me you can't win without going to the materially contributes test? No. No, we could win. Okay. Then explain how you win without the argument that you just made, which was asking me whether how this materially contributes to the unlawfulness. That's the fallback test. Right. We will discuss that, I promise. But first, I want to know how you win without that. The map is essentially, as I believe Your Honor was questioning my opponent, is a pictorial representation. I get totally with the map. In fact, I browbeat the other side into agreeing with you on that point. The question is the street address, not the pictorial representation based on GPS or something like that. Well, if we assume, if we assume for the sake of argument that the search engines are making up street addresses, I still believe the defendants, as interactive service providers, are entitled to set up a map any way they want. If you, as a customer, an advertiser on the platform, pays money, if they did this, not that they do, but if they did this, you set up your map so that the people who pay you more money get a pinpoint closer to whoever's asking. That's no different from a search engine page where you get a search result at the top of the page that, you know, has an advertisement for somebody who paid you for placement. You're wandering off the question. I mean, it's just like you are trying to get hard to the materially contribute test. You know, I hear you. That's not what we're asking. I think it's more a neutral tool. Don't make it a map. Make it an address where there's a list. Show us the locksmiths, your client. They list the locksmiths. No map. They list them, and they put in phony addresses. That's merely an allegation. I'm not saying they do or they don't. They make up addresses, and they make up information about Joe's locksmith that they got from nowhere other than their own heads. No logarithms or anything. They just make it up. Well, if you look at the pleading as a whole and you look at the arguments that have been made in the briefing, it is very clear that the locksmith's plaintiffs here are alleging that this information is derived from location content that's provided. That's what I thought your explanation was going to be. It's taken a bit to get to it. I thought it was that you have an algorithm that takes into account the representation that the person is in Washington, D.C., and a telephone number which associates with Washington, D.C. because it's a 202 number, and maybe they also do a reverse directory if there is such a thing anymore for cell phones. And maybe that's how you do it. And so it's all derived from information provided plus a pure mathematical algorithm. Is that an accurate representation of both of what happens and what your explanation would be? That is an accurate representation of what happens. The algorithm includes many, many, many different points. And what you're talking about is a search engine platform taking all of this information and deciding how to present it to a customer. Right. Now, the problem is that's not their allegation. That is among their allegations. Their allegation is, and I totally get what you're saying on that, and I totally understand how that argument works pretty easily for you, but they are saying in a complaint at a state motion to dismiss, it may or may not be implausible, I don't know because you haven't responded to it, that they're not deriving it from anything. They are simply making it up. They are making up an address. That's their allegation. Now, the question is, on a motion to dismiss, can a judge say, no, that sounds implausible to me? Yes, the judge can say it sounds implausible. The Mehmet Court in the Fourth Circuit affirmed a district court decision where the judge says it's implausible that these eight reviews, specific reviews that have been identified by the plaintiff, and the plaintiff said it was a car dealership, right? So the car dealership says, hey, this consumeraffairs.com site has these eight reviews that are negative to me, that I think are completely fabricated because I don't have any record of those specific customers buying those specific cars at those specific dates. There is no other record I can find anywhere that shows that those customers made any complaint to the Department of Consumer Affairs. There's the consumeraffairs.com must have made them up. This was the defendant's response, you're saying? This was the... The defendant's response saying, I don't have any such information. Is that right? I'm just trying to understand. No, no, no. The plaintiff. The plaintiff was pleading. These must have been made up by the defendant because I, the plaintiff, can't figure out where this information came from. And the Fourth Circuit affirmed to district court saying that sort of speculative sort of get-around-the-statute conclusory threadbare allegation is not enough. So there's, let me just add something. And, again, I don't know where it goes. They claim, and I don't know whether they can do it or not because I'm just thinking we're at a motion to dismiss. They claim we have the information and we'll show you these made-up addresses. Now, I don't know whether that's true or not. But they weren't put to the test. Can they be dismissed on a notion of implausibility when they say we have that information? They shouldn't put that information in the complaint. You're saying they have to plead it, you're saying. I'm saying they have to plead it now. We've reached the point now with Igbal et al that at a motion to dismiss, you have to do what we used to do in summary judgment. You've got to put your whole case in and refute any defenses along the way. Otherwise, we're going to dismiss you on a motion to dismiss. No, no. You have to put enough to make your claim not. They did, they said. And in notice pleading, the old days anyway, and I'm not saying, you know, maybe you're right. But in notice pleading, they did make the claim. They said we have the phony addresses. Well, in this particular case, in their reply brief, they didn't say, in their reply brief on page 5, they said we have no idea. They essentially said we have no idea where this address comes from. And that cannot be enough to open the door to discovery in a Section 230 case where you really are talking about. We don't know what they're talking about. We don't think that they're. They don't know because it's not coming from the locksmith. But all of those locksmiths. You guys are getting it from somewhere. Those locksmiths all know what it takes to get a pinpoint on a map because they do it. So why don't they enlarge some facts? That's not the allegation, right? The allegation is someone says, I'm Joe's locksmith, and I have area code 703, and someone does a search for local locksmiths near me, and suddenly Joe's locksmith pops up with not just that phone number but an address or even just a multi-block area that shows, that communicates this locksmith is near you, but that information didn't come from Joe. It didn't come from the consumer. The only other place it could have come from. How do we know it didn't come from Joe? Because that's my hypothetical to you. We're having the same problem here. Yeah. Questions have to come from the bench. Okay. Can I ask you about the inducement? Are you finished? I just don't know if you have an answer. Do you have an answer? I'm sorry. I lost track of what that was. You were trying to rely on their argument that they don't know where it came from, because you guys must have added it. Now, you may dispute that as a matter of fact, but if the allegation is not provided by the locksmith, not provided by the consumer, and yet it shows up on a pin drop map or a list of local locksmiths, you're responsible for it. If your algorithm is. Well, it's only part of the fraud if the locksmith doesn't show up locally, right? It's the same. No, that's not their argument. The argument is local. People want local businesses. And you're saying someone's local without knowing that they're local. 703 is a very large area code. They may not be local at all. If you took their argument to its extreme, though, I think Your Honor was right in that what are the search engines supposed to do to try to. . . Not give an address. Even if they're paying you ad money, they don't give you an address. That's what they would say, I think. Which is why I think for allegations like this that are clearly intended, when you look at the complaint which talks about hundreds of thousands of websites by these other locksmiths that are out on the Internet, right, that provide area codes, that provide claims of local business. Hundreds of thousands is what they allege in the complaint. You have hundreds of thousands of those, and you have just a bald allegation, defendants create the address. You also have all these allegations that say defendants use all kinds of algorithms. And yet not a single example, not a single screenshot. Let me try this one more time. So other than the defendants here, let's imagine there's yet another Internet service provider, the bad provider. And what happens when someone searches on there is that they plug in specific addresses. Gets people more business, people buy more ads from them, right? They plug in the address themselves. All I'm asking you is would that count as the creation or development of content for purposes of the CDA? Yes or no? No. It's really literally no different from a search engine deciding what they're going to put on the first page with all kinds of algorithms. There is nothing wrong with pay to play. There's nothing wrong with saying if you want to participate in Yelp and have me help you move your positive reviews to the top and pay me advertising. There's nothing wrong with that. The question is whether you still get CDA immunity, whether you're creating or developing content. That's the only question. And you say that is not the creation or development of content. That's not the creation or development of content of the type that Section 230 was meant to address. That is presenting information from others in a manner that search engine decides. The idea was that the service provider creates the address. I don't think that that counts. So it's not, under the hypothetical, it is not from anyone else but the service provider. And your position is still that that is not the creation or development of content. That is not the creation and development of content that subjects the service provider to civil liability in a case like this one. You asked me why it was immaterial to the fraud. And I think that opposing counsel explained why that test doesn't really help in this case, which is their whole claim is that people are induced to use the closest locksmith. And so if that's the test, then it's part of the fraud to get it located as close as possible to the caller. So I don't see how the material contribute to the fraud test helps you here. I do understand it in other cases, but I don't understand how it helps you in this case. It seems the gravamen of their complaint with respect to their fraud counts is that if they are not protected, if you are not protected by the CDA, what you've done assists the fraud. The fraud being a locksmith showing up who? Well, or a locksmith who is not the closest one beating out somebody who is the closest one when the competitor and therefore is injured. I mean, even leaving aside the question of whether the consumer is injured here, after all, the plaintiffs are not consumers. They are locksmiths. And they would like to be the closest locksmith. And if they actually are the closest locksmith, then they are being injured by somebody representing as closer when they're not actually closer. The claim, the harm there and the claim there is against the locksmith who's making the false representation about being closer. It's not against. We're going in circles on it. You're not accepting our hypothetical. We're trying to put that on your client. And I know I would resist, too, if I were in your place. But it's our hypothetical. And you're resisting it. We're saying it isn't the locksmith who has put themselves closer. It's your client who put them closer. The maps are essentially a neutral tool. No, we're going in circles again. It's inconsistent with our hypothetical. We're trying to get you completely away from that. And try and replicate their allegation, whether it's right or wrong, I don't know. But you just don't want to go there. We're saying the algorithms don't work in our hypothetical. Well, if you look at the statute and the congressional policy behind the statute, the statute is set up so that Internet service providers, like the defendants here, who are dealing with millions and millions of points of information, are given freedom from the specter of tort liability for the publishing decisions that they make about how they present their platforms. Deciding where to put a pinpoint on a map is a publishing decision, essentially. I would say that if you decide you're going to pepper your map with pinpoints that are not accurate, that's probably not a wise business move, and that's probably not going to generate a lot of business for your particular map. But it's a publisher function. Where do you publish this third-party phone number? Where are you going to put it? And I think that is essentially what Section 230 is designed to protect Internet service providers against. Were it otherwise, right, plaintiffs in a case like this could essentially say, I'm aware that there are hundreds of thousands of businesses out there that are presenting websites to you on the Internet, representing all this information about where they do business. And I don't know how the pinpoint is created, but let me get some discovery from these defendants. No, I mean, it's just too far away from what they're alleging. You know, I'm totally sympathetic to what you're just saying. You're right. You can knock them out pretty fast, but that's not what they're alleging. Well, they're alleging that, well, what they're alleging, if you look at the injunctive provision in the complaint, what they're seeking to stop these defendants from doing is publishing activity. They'll stop. There are four different provisions in the injunctive provision at the request at the end of the complaint. Publishing, publishing, publishing, publishing. Cease and desist from publishing. These are essentially publishing functions and publishing decisions that defendants are being charged with. All right. Do we have further questions? No. Okay. Thank you. Just defendants submit that the decision should be affirmed. Thank you. We figured that would be the bottom line. All right. Now we're here. I think we're over here, too. All right. We'll give you two more minutes. We'll give you two more minutes. Thank you, Your Honor. Could you tell us something about this allegation about screeching? Very quickly. We are just looking. We have, I think, clearly alleged fictitious addresses, pinpoints, and so on. We're looking for an opportunity to prove those allegations. But to take Judge Edwards' point, the law is no longer the law that it was when I was in law school after Iqbal and Twombly, and now you have to have plausible allegations based on factual allegations made in the complaint. What's plausible about the idea that they actually have made up? Your claim is that they made up addresses based on no information from anywhere else? Is that your claim? Essentially, what they claim they're doing is trying to – No, no, no. No, wait. We're all over the place today. Answer the Chief Judge's question, exactly the one he asked, please, to help me. We allege that they are making up and putting in addresses because it advances their business purposes. I don't care what their reason. Forget the reason. But we claim they are making up addresses. We have dozens of screenshots showing them we want to present this evidence. The district court basically made findings of fact based on no evidence instead of looking at the allegations of the complaint. In the Iqbal world, did it not occur to you to include that with your complaint? Your Honor, I generally do not include detailed evidence in a complaint. For example, in a complaint, for example, we're saying they flat out made up an address. Here we're attaching to our complaint examples of that. I suppose we could have done it, but we thought it was sufficient to merely allege that they have false addresses and we are prepared to present proof. Yes, I suppose we could have added evidence, but I have to say I have not generally included a lot of evidence in a complaint. I went to law school a long time ago and they explained notice pleading to me. It's not the same. In case you missed it. But your complaint says that these businesses tricked Google into displaying them as physical locations, tricked. So that must be they must have done something that tricked Google into doing that. Not just that Google made it up on its own, but that they did something to trick them. I guess I had understood this trick being something like the statement. We're in the neighborhood on their website or we're in the Washington area or we're in a 202 telephone number or something like that. Is there some other trick? I don't know what it is. We believe Google and the others are publishing these false addresses, false locations to induce consumers to either click them, which results in revenue, or call them. I understand. But what is the meaning of the sentence in your complaint that says these businesses have tricked Google into displaying them as physical stores in their neighborhoods? What did you mean by trick? What we mean by that is they try and present themselves as legitimate, but there's often indicia that they're not. And the representation of themselves as legitimate are on some false website. Is that what you're saying? How have they done that? They will have a website that does not contain complete information. And what we are saying is the search engines are adding information and it's that new information makes part of what is published new information. But there must be something in the website that is tricking them. That's your allegation. What is it about the website that tricks them? On the surface, the websites suggest that they really are a locksmith. It's that simple. No, but this is tricking them into displaying them in a particular neighborhood. We may have used the wrong word. It's not that there's something there. But the scammers have the websites in an effort to get consumers to call in and to get Google to pick them up and display them prominently. And they're not legitimate. That's the trick. Okay. Further questions? Okay. Thank you all very much. We'll take the matter under submission.
judges: Garland, Millett, Edwards